IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

THOMAS ALLEN FARR,

    Plaintiff,

      v.

CTG HOSPITALITY GROUP, LLC
d/b/a/ LIVE! AT THE BATTERY, ET
AL.,

    Defendants.

CIVIL ACTION FILE
NO. 1:22-CV-883-TWT

## OPINION AND ORDER

This is a civil rights case. It is before the Court on Defendants CTG Hospitality Group, LLC d/b/a Live! At The Battery ("CTG") and The Cordish Company ("Cordish")'s ("Business Defendants") Motion to Dismiss [Doc. 64], Defendants Clinton Monahan and David Whitley's, in their individual capacities, ("Officer Defendants") Motion to Dismiss [Doc. 65], Defendants Cobb County, Timothy Cox, Monahan, and Whitley's, in their official capacities, ("County Defendants") Motion to Dismiss [Doc. 66], and the Braves Defendants'[1] Motion to Dismiss [Doc. 74]. As explained below, the Business Defendants' Motion to Dismiss [Doc. 64] is DENIED, the Officer Defendants' Motion to Dismiss [Doc. 65] is GRANTED in part and DENIED in part, the

---

[1] The "Braves Defendants" are Defendants BDC Holdco, LLC, Braves Development Company, LLC, Braves Holdings, LLC, Liberty Media Corporation, Atlanta Braves, Inc., BDC Retail I LLC, and The Battery Atlanta Association, Inc.

County Defendants' Motion to Dismiss [Doc. 66] is GRANTED in part and DENIED in part, the Braves Defendants' Motion to Dismiss [Doc. 74] is GRANTED in part and DENIED in part, and the Defendants' Joint Motion to Stay [Doc. 79] is DENIED as moot.

## I. Background[2]

This case involves allegations that the Plaintiff suffered a broken neck after being tackled and placed in an arm bar by an off-duty police officer following an altercation with the manager of a bar.

### A. The Parties

Plaintiff Thomas Allen Farr is an individual who resides in Cobb County, Georgia. (2d Am. Compl. ¶ 1 [Doc. 55]). Defendants Cordish and CTG are corporate entities that owned, operated, and/or did business at "Live! At the Battery" and/or "PBR Atlanta" at the time the Plaintiff was injured. (*Id.* ¶¶ 18, 23). Defendants Monahan ("Officer Monahan"), Whitley ("Officer Whitley"), and Cox ("Officer Cox") are individuals who were police officers at the time the Plaintiff was injured. (*Id.* ¶¶ 6, 9, 13). Officers Monahan and Whitley were employed as private security officers during the events that led to the Plaintiff's injury. (*Id.* ¶¶ 9, 13). Officer Cox was employed as the Chief of Police of the Cobb County Police Department during the events that surround the Plaintiff's injury. (*Id.* ¶ 6). Defendant Cobb County is a political

---

[2] The Court accepts the facts as alleged in the Second Amended Complaint as true for purposes of the present Motion to Dismiss. *Wilding v. DNC Servs. Corp.*, 941 F.3d 1116, 1122 (11th Cir. 2019).

subdivision of the State of Georgia. (*Id.* ¶ 2). Defendants BDC Holdco, LLC, Braves Development Company, LLC, Braves Holdings, LLC, Liberty Media Corporation, BDC Retail I LLC, and The Battery Atlanta Association, Inc are corporate entities that owned, operated, and/or did business at the location of the Plaintiff's injury. (*Id.* ¶¶ 29, 35, 40, 49, 53). Defendant Atlanta Braves, Inc. is a corporate entity that employed Defendants Monahan and Whitley as security officers at the time of the Plaintiff's injury. (*Id.* ¶ 57).

### B. The Incident

On the evening in question, Officers Monahan and Whitley were employed as off-duty officers providing security at a specified business (the "Premises"), wearing their Cobb County Police Department uniforms. (*Id.* ¶ 74). The Plaintiff was a patron on the Premises with his friends. (*Id.* ¶ 76). At some point that evening, the Plaintiff and his friends were inside a bar ("PBR Atlanta") located on the Premises. (*Id.* ¶ 77). A staff member at PBR Atlanta directed one of the Plaintiff's friends to leave the bar. The Defendant Monahan was directed by a staff member to instruct the Plaintiff and his friends to leave the bar. (*Id.*). The Plaintiff had not acted in a manner that would warrant removal from PBR Atlanta. (*Id.* ¶ 78).

Officer Monahan physically pushed the Plaintiff out of PBR Atlanta and onto the landing where Officer Whitley was stationed. (*Id.* ¶ 80). The Plaintiff and his friends began walking away. (*Id.*). Justin Gillis, the manager for PBR Atlanta, followed Officer Monahan, the Plaintiff, and his friends as they left

the building. (*Id.*). Gillis approached the Plaintiff when he was on the opposite side of the landing from PBR Atlanta, still on the Premises. (*Id.* ¶¶ 81-82). Gillis began insulting and taunting the Plaintiff, eventually pushing the Plaintiff towards a staircase with his chest and spitting on the Plaintiff's face. (*Id.* ¶¶ 84-85). Gillis then tacitly signaled Officer Monahan to take over management of the situation. (*Id.* ¶ 87). Officer Monahan complied and detained the Plaintiff at the top of the staircase. (*Id.* ¶¶ 87, 89). During a subsequent conversation between Officer Monahan and the Plaintiff, Officer Monahan shoved the Plaintiff backwards towards the staircase. (*Id.* ¶ 90). As the Plaintiff attempted to regain his balance to avoid falling down the staircase, Officer Monahan pulled the Plaintiff toward him and performed an "armbar-takedown" without any warning or notice to the Plaintiff. (*Id.* ¶¶ 91-92, 94).

Officer Whitley then came over to assist Officer Monahan. (*Id.* ¶ 96). Officer Whitley prevented bystanders from aiding the Plaintiff. (*Id.*). The Officer Defendants pushed the Plaintiff into the pavement, pinned the Plaintiff down with their knees, and drove the Plaintiff's head into the concrete. (*Id.*). The Plaintiff sustained head trauma, a loss of consciousness and a fractured neck. (*Id.*). The Officer Defendants then handcuffed the Plaintiff and tried to get the Plaintiff on his feet but failed due to the injuries he had sustained. (*Id.* at ¶ 97). The Officer Defendants harmed the Plaintiff further in their attempt to get the Plaintiff to stand. (*Id.*). The Plaintiff remained on the pavement at

the Premises for approximately 14 minutes before an emergency medical team and ambulance arrived, where he was taken to a hospital for treatment of his injuries. (*Id.* ¶¶ 101-102).

The Plaintiff filed this lawsuit to recover damages for the injuries he suffered. (*Id.* ¶¶ 2-3). He asserts thirteen state-law causes of action against fifteen named defendants. The Business Defendants, the County Defendants, the Officer Defendants, and the Braves Defendants have filed separate Motions to Dismiss the Second Amended Complaint.

## II.    Legal Standard

A complaint should be dismissed under Rule 12(b)(6) only where it appears that the facts alleged fail to state a "plausible" claim for relief. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); Fed. R. Civ. P. 12(b)(6). A complaint may survive a motion to dismiss for failure to state a claim, however, even if it is "improbable" that a plaintiff would be able to prove those facts; even if the possibility of recovery is extremely "remote and unlikely." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556 (2007). In ruling on a motion to dismiss, the court must accept the facts pleaded in the complaint as true and construe them in the light most favorable to the plaintiff. *See Quality Foods de Centro Am., S.A. v. Latin Am. Agribusiness Dev. Corp., S.A.*, 711 F.2d 989, 994-95 (11th Cir. 1983); *see also Sanjuan v. Am. Bd. of Psychiatry & Neurology, Inc.*, 40 F.3d 247, 251 (7th Cir. 1994) (noting that at the pleading stage, the plaintiff "receives the benefit of imagination"). Generally, notice pleading is all that is

required for a valid complaint. *See Lombard's, Inc. v. Prince Mfg., Inc.*, 753 F.2d 974, 975 (11th Cir. 1985). Under notice pleading, the plaintiff need only give the defendant fair notice of the plaintiff's claim and the grounds upon which it rests. *See Erickson v. Pardus*, 551 U.S. 89, 93 (2007) (citing *Twombly*, 550 U.S. at 555).

## III.    Discussion

### A.  Business Defendants' Motion to Dismiss

The Business Defendants make two main arguments within their Motion to Dismiss. First, the Business Defendants argue that the Plaintiff's claims constitute an impermissible shotgun pleading. (*See* Business Defs.' Br. in Supp. of Mot. to Dismiss, at 10-13 [Doc. 64]). Second, the Business Defendants argue that the Plaintiff cannot hold them liable for the conduct of the Officer Defendants under Georgia law. (*See id.* at 13-17). The Court will take each argument in turn.

#### 1.  Shotgun Pleading

"A shotgun pleading is a complaint that violates either Federal Rule of Civil Procedure 8(a)(2) or Rule 10(b), or both." *Barmapov v. Amuial*, 986 F.3d 1321, 1324 (11th Cir. 2021) (citation omitted). "Shotgun pleadings are flatly forbidden by the spirit, if not the letter, of these rules because they are calculated to confuse the enemy, and the court, so that theories for relief not provided by law and which can prejudice an opponent's case, especially before the jury, can be masked." *Id.* (citation modified). There are four rough

6

categories of shotgun pleadings, two of which have relevance in the current action. *See Weiland v. Palm Beach Cnty. Sheriff's Off.*, 792 F.3d 1313, 1321 (11th Cir. 2015). The most common type is "a complaint containing multiple counts where each count adopts the allegations of all preceding counts." *Id.* (compiling cases). Another type relevant to this action is "the relatively rare sin of asserting multiple claims against multiple defendants without specifying which of the defendants are responsible for which acts or omissions, or which of the defendants the claim is brought against." *Id.* at 1323.

Earlier in this instant action, the Business Defendants filed a Motion to Dismiss the Plaintiff's Amended Complaint, in part because the Plaintiff's allegations within the Amended Complaint constituted a shotgun pleading. (*See generally* Business Defs.' Mot. to Dismiss [Doc. 44]). The Court agreed with the Business Defendants that the Amended Complaint constituted the first type of shotgun pleading. (Mot. to Dismiss Op. & Or., at 4-6 [Doc. 54]). Accordingly, the Plaintiff filed its Second Amended Complaint purporting to correct the deficiencies contained within the Amended Complaint. (*See generally* 2d Am. Compl.).

The Business Defendants now argue within their current Motion to Dismiss that the Plaintiff's Second Amended Complaint is violative of the second category of shotgun pleadings. Specifically, the Business Defendants' main contention is that the Second Amended Complaint's allegations "lump all defendants together and assert identical allegations as to each, without

distinction." (Br. in Supp. of Business Defs.' Mot. to Dismiss, at 10 (citation modified)). In response, the Plaintiff argues that he complied with the Court's previous order by asserting factual allegations throughout the Second Amended Complaint and that all Defendants added in each count have plausible liability.

The Business Defendants rely on *Magluta v. Samples*, 256 F.3d 1282 (11th Cir. 2001) to support their position that the Plaintiff's Second Amended Complaint is a shotgun pleading. In *Magluta*, the Eleventh Circuit vacated and remanded the lower court's decision to deny the defendant's motion to dismiss because it found that the plaintiff's complaint was a shotgun pleading. *Magluta*, 256 F.3d at 1284-85. The Eleventh Circuit made their determination that the complaint was a shotgun pleading because (1) all defendants were charged in each count, even when "geographic and temporal realities make plain that all of the defendants could not have participated in every act complained of," (2) each count incorporated by reference factual allegations contained in a general factual section that comprised 146 paragraphs, while also incorporating the allegations of any count or counts that preceded it, and (3) the complaint was 58 pages long and addressed 14 different defendants. *Id.* at 1284.

Here, under *Magluta*, the Business Defendants may be right to point to the fact that the Second Amended Complaint is 176 pages long, contains 566 numbered paragraphs, and names 18 defendants. (Br. in Supp. of Business

Defs.' Mot. to Dismiss, at 11-12). They may also be correct to point out that the Second Amended Complaint is needlessly repetitive as the Plaintiff recites identical facts in each count of the Second Amended Complaint. *Id.*

But the similarities with *Magluta* end there. Unlike *Magluta*, the Second Amended Complaint does not allege every defendant engaged in every count listed. All defendants referenced within the Second Amended Complaint are plausibly related to each claim. Furthermore, the Defendants do not contest that the Plaintiff corrected his incorporation defect complained about within the first Motion to Dismiss.

Looking at the Plaintiff's Second Amended Complaint in detail, the document contains thirteen causes of action constrained to the relevant parties. Counts 1 through 5 contain detailed factual allegations asserting Georgia law tort claims against the Officer Defendants for their individual conduct against the Plaintiff. (*See* 2d Am. Compl. ¶¶ 74-258). Counts 6 through 9 contain additional claims and factual allegations against the County Defendants that are directed towards those four defendants, not all defendants. (*See id.* ¶¶ 259-443). The Business Defendants focus on Counts 10 (Negligence), 11 (Negligent Hiring, Supervision and Retention) and 12 (Vicarious Liability) to argue that there is no way for every named defendant to have hired the Officer Defendants. (Br. in Supp. of Business Defs.' Mot. to Dismiss, at 11-12; *see id.* ¶¶ 488-566). However, Count 10 includes the Business Defendants, among nine other named Defendants, under a theory of

premises liability that the Business Defendants do not contest as part of their argument. (*See* 2d Am. Compl. ¶¶ 479-485). Furthermore, the Plaintiff acknowledges that not every Defendant may be liable for either count with the use of "and/or" within the Second Amended Complaint. (*See id.* ¶¶ 522-534, 564, 566; Pl.'s Br. in Opp'n to Business Defs.' Mot. to Dismiss, at 9).

"A dismissal under Rules 8(a)(2) and 10(b) is appropriate where it is virtually impossible to know which allegations of fact are intended to support which claim(s) for relief." *Weiland*, 792 F.3d at 1326 (citation modified). While needlessly verbose and cumbersome, no such virtual impossibility exists with regard to the Second Amended Complaint. Therefore, the Court will not grant the Business Defendants' Motion to Dismiss on these grounds.

### 2. Business Defendants' Liability

The Business Defendants make two general arguments for why they are not liable for the conduct of the Officer Defendants in their Motion to Dismiss. First, the Business Defendants argue that they cannot be vicariously liable for the Officer Defendants' conduct because their actions were performed in the course of their police duties. (*See* Br. in Supp. of Business Defs.' Mot. to Dismiss, at 13-17). Second, the Business Defendants argue that they cannot be held liable for actions that solely involve the Officer Defendants' conduct. (*Id.* at 19-21). The Court takes each argument in turn.

### a. Vicarious Liability (Count 12)

"An employer may be vicariously liable for torts committed by its employees, but such liability does not extend to torts committed by an independent contractor." *Carnegay v. WalMart Stores, Inc.*, 353 Ga. App. 656, 658 (2020). Whether a tortfeasor is an employee or independent contractor "will depend on whether the employer had the ability to control the time, manner, and method of executing the work." *Id.* (citation omitted). If the employer did not have the ability to control the time, manner, and method of executing the work, then the tortfeasor is an independent contractor. *Id.* at 658-59 (citation omitted).

When applying this test to an off-duty police officer contracted for security, Georgia courts ask whether the police officer is acting (1) as an agent of the city, (2) as an agent of the company, or (3) in a dual capacity. *Ambling Management Co., LLC v. Miller*, 295 Ga. 758, 761-62 (2014) (citing *Pounds v. Central of Ga. Ry. Co.*, 142 Ga. 415, 418 (1914)). "If [the officer] commits a tort merely as a police officer, the company would not be liable, unless it was done at the direction of the company." *Id.* at 762. "The mere fact that a [company] pays for the services of a certain police officer, who does nothing but perform the duties of a police officer proper, does not make the company liable." *Id.* In determining the officer's capacity, the relevant facts to consider are those that exist at the time the tort occurred. *Id.* at 763-64. A determination of the officer's capacity is a factual question for the jury. *Id.*

The Business Defendants argue the Second Amended Complaint includes no facts supporting a finding that the Officer Defendants were employees of the Business Defendants. In support, the Business Defendants present two cases from the Georgia Court of Appeals, *Page v. CFJ Properties*, 259 Ga. App. 812 (2003), and *Hyatt Corp. v. Cook*, 242 Ga. App. 542 (2000).

In *Page*, the defendant hired an off-duty police officer to provide security at their travel plaza. 259 Ga. App. at 812. After the officer arrested the plaintiff on his own volition based on his belief that the plaintiff was shoplifting, the plaintiff sued the defendant on a theory of vicarious liability for malicious arrest and prosecution. *Id.* at 813. The appellate court determined that the defendant could not be vicariously liable for the officer's actions because the officer was performing police duties which the defendant had not directed when arresting the plaintiff. *Id.*

Similarly, in *Cook*, the defendant hired an off-duty police officer to provide security for the Defendant's business. 242 Ga. App. at 543. The officer was asked by the defendant to assist with a problem within the bar onsite. *Id.* at 544. In doing so, the officer physically removed the plaintiff, escorting him outside to wait for a police van. *Id.* Similar to *Page*, the appellate court determined that the defendant could not be vicariously liable for the officer's actions because there was no evidence that the defendant had given the officer any direction as to how he should empty the bar or that the defendant had given him any instructions regarding his security duties. *Id.*

12

However, the Court is unpersuaded that either case controls in this matter because *Page* and *Cook* are wholly distinguishable. In order to succeed, the Business Defendants' argument requires the Court to apply holdings established at the summary judgment stage to a motion to dismiss. The Georgia Supreme Court made clear that the issue of officer capacity requires a factual inquiry. *See Ambling Management Co., LLC*, 295 Ga. at 763. To dismiss the Business Defendants prior to any discovery would sidestep this factual inquiry into the Plaintiff's allegations.

Furthermore, contrary to the Business Defendants' assertions, the Plaintiff has alleged sufficient facts regarding the time the cause of action arose to survive a motion to dismiss. *See id.* at 763-64. The Plaintiff alleges that the Officer Defendants were hired by the Business Defendants and that the actions of the Officer Defendants took place during the course and scope of their employment. (*See* 2d Am. Compl. ¶¶ 535, 564). This is evidenced by Officer Monahan removing the Plaintiff and his friends soon after staff at PBR Atlanta asked the group to leave. (*See id.* ¶¶ 538, 540-41). Further, Gillis, the manager of PBR Atlanta, directed Officer Monahan to engage the Plaintiff which led to the injuries alleged by the Plaintiff. (*Id.* ¶¶ 548, 565). It is only after this direction that the Officer Defendants engage in the tortious conduct. (*Id.* ¶¶ 548, 550-560).

Ultimately, there is sufficient detail within the Plaintiff's Second Amended Complaint in Count 12 to survive a motion to dismiss.[3] Without discovery, the Plaintiff will not have the required information to determine what the specific duties and expectations of the police officers were on the evening in question.[4] (*See* Pl.'s Br. in Opp'n to Business Defs.' Mot. to Dismiss, at 17). Therefore, the Court will not dismiss the Business Defendants from Count 12 of the Complaint.

### b.  Participation (Counts 10, 11, 12)

The Business Defendants attempt to attack Counts 10 (Negligence), 11 (Negligent Hiring, Supervision and Retention) and 12 (Vicarious Liability) of

---

[3] The Business Defendants make an argument, in passing, that they cannot be vicariously liable for the Officer Defendants' conduct because the Plaintiff left PBR Atlanta, rendering the Officer Defendants' conduct outside of the scope of any alleged directions by PBR Atlanta staff. (Br. in Supp. of Business Defs.' Mot. to Dismiss, at 15). Not only is this argument unsupported by Georgia law, but it is also unsupported by the context in which the Plaintiff was outside of PBR Atlanta. Gillis, PBR Atlanta staff, and Officer Monahan all contributed towards removing the Plaintiff from PBR Atlanta and Gillis and the Officer Defendants continued the interaction once the Plaintiff was outside of PBR Atlanta. (*See id.* ¶¶ 538-560). Thus, this argument is entirely unconvincing.

[4] It is also for this reason that the Business Defendants' attempt to distinguish *Ambling Management Co., LLC* fails. The Business Defendants argue that the Court should not consider the case because "there was evidence in the record that the property owner sent emails stating it 'wanted the officers to increase arrests in order to deter crime and evict tenants who were linked to illegal activity'" and there is no such allegation in the instant case (Br. in Supp. of Business Defs.' Mot. to Dismiss, at 18). However, evidence of such a practice would only arise after discovery between the parties. The Plaintiff is not required to allege in its Second Amended Complaint facts where the Plaintiff had no proof that such conduct occurred because it is not a required element of his claim.

the Second Amended Complaint by arguing that the Plaintiff failed to plead factual allegations that any agent of the Business Defendants directed the Officer Defendants' interactions with the Plaintiff. (Br. in Supp. of Business Defs.' Mot. to Dismiss, at 19). The Business Defendants assert that, because the Officer Defendants were working in their official capacity, the Business Defendants cannot be held liable for their actions. (*Id.*, at 20). The Court disagrees.

Counts 10 and 11 are claims premised on direct liability against the Business Defendants. Count 10 is a claim based on premises liability, while Count 11 alleges that the Business Defendants were negligent in their hiring, supervision and retention of the Officer Defendants. In both counts, the Plaintiff makes the claim that the Business Defendants should have been aware of Officer Monahan's alleged history of excessive force, leading to the claims of direct liability. (*See* 2d Am. Compl. ¶¶ 474-487, 517-534). The Plaintiff further alleges that at least two prior excessive force reports occurred at the Premises, which the Business Defendants should have been aware of. (*See* 2d Am. Compl. ¶¶ 478, 521). In this situation, the Business Defendants are entities that could own the premises and have control over hiring decisions. Accordingly, the Plaintiff has pled sufficient facts to support his claims in Counts 10 and 11.

The Business Defendants' appear to repeat their vicarious liability argument against Count 12 and it fails for the same reason. The determination

of whether the Officer Defendants are acting in an official capacity is a factual question that is generally answered, at the earliest, within the discovery phase on a motion for summary judgment, so long as a plaintiff has sufficiently pled that the officers were not acting in any police capacity. Here, the Plaintiff has done so. Accordingly, Count 12 has been sufficiently pled within the Second Amended Complaint.

## B. Officer Defendants' Motion to Dismiss

The Officer Defendants make several arguments for dismissal of the claims against them. The Court will discuss the Plaintiff's evidentiary objections before turning to the Officer Defendants' arguments on the merits.

### 1. Evidentiary Objections

The Officer Defendants reference two exhibits within their Motion to Dismiss. The first exhibit references security camera footage taken outside of PBR Atlanta (the "Video"). The second exhibit references a negotiated *nolle prosequi* agreement entered into by the Plaintiff with regard to an underlying criminal prosecution (the "*Nolle Pros*"). The Plaintiff objects to the consideration of both exhibits.

When ruling on a motion to dismiss, the court may not consider any evidence beyond the face of the complaint and any additional documents attached thereto. *See Fin. Sec. Assurance, Inc. v. Stephens, Inc.*, 500 F.3d 1276, 1284 (11th Cir. 2007). However, this rule is not absolute. An exception exists when (1) the defendant attaches the document to its motion to dismiss, (2) the

document is central to the plaintiff's claim, and (3) the document's authenticity is not challenged. *Jackson v. City of Atlanta, Ga.*, 97 F.4th 1343, 1350 (11th Cir. 2024). The Court applies this exception to both exhibits.

### a. The Video

The Officer Defendants premise their arguments within their Motion to Dismiss on their account of the Video. Specifically, the Officer Defendants argue that their account of the Video should control the outcome of their Motion to Dismiss because "the events depicted in that video differ substantially from the alleged facts in [the] Plaintiff's [Second Amended Complaint]." (Br. in Supp. of Officer Defs.' Mot. to Dismiss, at 3 n. 2 [Doc. 65]). In response, the Plaintiff argues that the Video should be excluded from consideration because its contents are disputed and it is not central to his claims. (*See* Pl.'s Br. in Opp'n to Officer Defs.' Mot. to Dismiss, at 5-9 [Doc. 83]).

### i. Consideration of the Video

The Video satisfies the first and second elements of the exception. The Plaintiff refers to the Video in the complaint numerous times. (*See* 2d Am. Compl. ¶¶ 81, 85, 117, 121, 153, 157, 190, 194, 227, 231, 266, 270, 304, 308, 345, 349, 382, 386, 451, 455, 495, 499, 542, 546). Furthermore, the Officer Defendants attach the Video to their Motion to Dismiss when they referred to the security footage within their Statement of Facts. (*See* Br. in Supp. of Officer Defs.' Mot. to Dismiss, at 3, 3 n. 2). The Plaintiff does not contest either element of the exception.

However, the Plaintiff does contest the centrality and disputes the contents of the Video. (Pl.'s Br. in Opp'n to Officer Defs.' Mot. to Dismiss, at 9). Both arguments are unconvincing. First, the Video is undoubtedly central to the Plaintiff's claims. The Court has previously ruled that the Video is central to the Plaintiff's claims against the Officer Defendants. (Mar. 13, 2024, Op. & Order, at 8 [Doc. 35]). Although the Plaintiff has amended his complaint twice since that ruling, the Plaintiff's allegations against the Officer Defendants are still premised on the same factual background. The events that transpired outside of PBR Atlanta, which makes up the majority of the factual background behind the Plaintiff's claims, were captured by the Video.[5] Even if there was some doubt to its centrality, the use of the Video within the Motion to Dismiss does not unfairly burden the Plaintiff they were aware of its existence. *See Fin. Sec. Assurance, Inc.*, 500 F.3d at 1285 ("The potential harm that courts are mindful of [when the question is close] is the lack of notice that the attached document may be considered by the court.") The Video is clearly central to the Plaintiff's claims in the Second Amended Complaint.

Second, the Plaintiff misinterprets the "undisputed" element of the test by arguing for the Video's exclusion from the Motion to Dismiss on the ground that the contents of the Video are disputed. (*See* Pl.'s Br. in Opp'n to Officer

---

[5] The Plaintiff implicitly acknowledges as much within its Second Amended Complaint. Each count acknowledges that the Video captured relevant facts related to its claims. (*See* 2d Am. Compl. ¶¶ 81, 85, 117, 121, 153, 157, 190, 194, 227, 231, 266, 270, 304, 308, 345, 349, 382, 386, 451, 455, 495, 499, 542, 546).

Defs.' Mot. to Dismiss, at 8-9). Whether evidence attached to a motion to dismiss is undisputed turns on the authenticity of the evidence. *See Day v. Taylor*, 400 F.3d 1272, 1276 (11th Cir. 2005) (citation omitted)). "Authentication evaluates the genuineness of a document, not its admissibility." *Larebo v. First Consumer Credit, Inc.*, 2008 WL 11417160, at *4 (N.D. Ga. Apr. 14, 2008), *report and recommendation adopted*, 2008 WL 11417154 (N.D. Ga. Jul. 29, 2008). The Plaintiff's argument fails because it does not matter whether the quality of the Video is problematic or whether the Plaintiff disagrees with the Officer Defendants' account of events. In contrast, the Plaintiff's argument disputing the Officer Defendants' version of events, with timestamps, implies that the Plaintiff does not dispute the genuineness of the Video. Because the Officer Defendants have satisfied the evidentiary requirements, the Court will consider the Video when considering the Officer Defendants' Motion to Dismiss.

### ii.  Disputed Account of the Video

The inquiry into the Video's applicability does not end here. The Court must still decide whether the Officer Defendants' account of the Video should control. The Officer Defendants argue that it should. (*See* Br. in Supp. of Officer Defs.' Mot. to Dismiss, at 3 n. 2). Generally, in evaluating video footage at the motion to dismiss stage, "courts must construe all ambiguities in the video footage in favor of the plaintiff." *Baker v. City of Madison, Ala.*, 67 F.4th 1268, 1277 (11th Cir. 2023) (citation omitted). However, "where a video is clear

and obviously contradicts the plaintiff's alleged facts, [a court] will accept the video's depiction instead of the complaint's account . . . and view the facts in the light depicted by the video." *Id.* at 1277-78 (citing *Scott v. Harris*, 550 U.S. 372, 381 (2007)). Ambiguities within pertinent video footage may include any shortcoming of the footage that is relevant to the factual dispute between the parties, such as an obstructed view or a lack of audio. *See id.*

After reviewing the Video, the Court sees insufficient reason to rely on the Officer Defendants' interpretation of the events that transpired. The Video does not plainly contradict the Plaintiff's version of events as both the Officer Defendants' interpretation and the factual allegations within the Second Amended Complaint take some liberty in describing the events that transpired. Additionally, the Court notes the limitations in the Video, particularly its lack of audio. The interpretation of the parties' actions can only be fully evaluated when understanding the dialogue that took place, which cannot be discerned from the Video. Therefore, while the Court will not ignore the contents of the Video with regard to certain factual events, the Court will rely on the Plaintiff's account where any ambiguity within the Video is discerned. *See Baker*, 67 F.4th at 1277.

### b. The Nolle Pros

The Officer Defendants also premise one of their arguments against Count 7 of the Second Amended Complaint on the context surrounding the *Nolle Pros*. Specifically, the Officer Defendants argue that, because the *Nolle*

*Pros* was obtained through compromise, the Plaintiff's illegal seizure claim is barred. (*See* Br. in Supp. of Officer Defs.' Mot. to Dismiss, at 16 n. 9). The Plaintiff objects to the consideration of the *Nolle Pros* in this Motion to Dismiss. (*See* Pl.'s Br. in Opp. to Officer Defs.' Mot. to Dismiss, at 16-17).

The Court first looks to whether the *Nolle Pros* meets the requirements for consideration at this stage. The Officer Defendants argue that it does because the Plaintiff references it within his Second Amended Complaint, the document is already part of the record, it is central to his claims, and its contents are not disputed. (*See* Br. in Supp. of Officer Defs.' Mot. to Dismiss, at 6 n. 3). It is indisputable that the *Nolle Pros* attached by the Officer Defendants is referenced by the Second Amended Complaint. [6] (*See e.g.* 2d Am. Compl. ¶ 214).

However, unlike his arguments against the Video, the Court is satisfied with the Plaintiff's argument against consideration of the *Nolle Pros* at this stage of the litigation. The Plaintiff argues that the *Nolle Pros* is functionally

---

[6] In attaching the *Nolle Pros* to their Motion to Dismiss, the Officer Defendants reference a previous docket entry where they filed the document with the Court. (Br. in Supp. of Officer Defs.' Mot. to Dismiss, at 6 n. 3). The Plaintiff argues that the Officer Defendants do not properly attach the *Nolle Pros* to the Motion to Dismiss because they had objections to the attachment of the *Nolle Pros* that were never resolved. (Pl.'s Br. in Opp'n to Officer Defs.' Mot. to Dismiss, at 16). This misinterprets the purpose of the Officer Defendants' reference to the docket. Whether or not consideration of the *Nolle Pros* was proper at that stage has no bearing on this inquiry when the Officer Defendants reference the docket entry to attach the document their Motion to Dismiss as a matter of convenience. The Officer Defendants could have just as easily attached the *Nolle Pros* once more to their document and the Plaintiff could not object on these same grounds.

illegitimate and inauthentic because the Plaintiff "did not negotiate the terms, had no part in the authorship of the proposed order, did not review and approve the contents of the document, and in fact, objected to the entry of the *Nolle Prosequi* Order." (Pl.'s Br. in Opp'n to Officer Defs.' Mot. to Dismiss, at 16). Where a plaintiff presents legitimate concerns about the authenticity of a document, courts within this Circuit have declined to consider the exhibit on a motion to dismiss. *See Miller v. City of Atlanta, Ga.*, 2022 WL 4587848, at *4 (N.D. Ga. Sep. 29, 2022); *Thompson v. City of St. Cloud*, 2023 WL 3931952, at *2 (M.D. Fla. Jun. 9, 2023); *see also Jackson*, 97 F.4th at 1355 (declining to exercise pendent jurisdiction over an appeal of the district court's decision not to consider a video at the motion to dismiss stage because, with an unclear record on whether the video was authentic, it was a question better resolved at a later stage of trial). The Plaintiff raised such concerns here and has raised them previously. Therefore, the Court declines to consider the *Nolle Pros* in resolving the Officer Defendants' Motion to Dismiss.

### 2. Qualified Immunity

The Court now turns to the Officer Defendants' substantive arguments. The Officer Defendants argue that they are immune from suit under the doctrine of qualified immunity.[7] "Qualified immunity offers complete

---

[7] "Although the defense of qualified immunity is typically addressed at the summary judgment stage of a case, it may be raised and considered on a motion to dismiss." *Corbitt v. Vickers*, 929 F.3d 1304, 1311 (11th Cir. 2019) (citation modified). "Generally speaking, it is proper to grant a motion to

protection for government officials sued in their individual capacities as long as their conduct violates no clearly established statutory or constitutional rights of which a reasonable person would have known." *Lee v. Ferraro*, 284 F.3d 1188, 1193-94 (11th Cir. 2002) (quotation marks and citation omitted). "The purpose of this immunity is to allow government officials to carry out their discretionary duties without the fear of personal liability or harassing litigation." *Id.* at 1194 (citing *Anderson v. Creighton*, 483 U.S. 635, 638 (1987)). The doctrine protects from suit "all but the plainly incompetent or one who is knowingly violating the federal law." *Id.* (quotation marks and citation omitted). "Because qualified immunity is a defense not only from liability, but also from suit, it is important for a court to ascertain the validity of a qualified immunity defense as early in the lawsuit as possible." *Id.* (quotation marks and citation omitted).

"To establish the defense of qualified immunity, the burden is first on the defendant to establish that the allegedly unconstitutional conduct occurred while he was acting within the scope of his discretionary authority." *Charles v. Johnson*, 18 F.4th 686, 698 (11th Cir. 2021) (citation modified). "Once the defendant establishes that he was acting within his discretionary authority, the burden shifts to the plaintiff to show that qualified immunity is not appropriate." *Id.* (quotation marks and citation omitted).

---

dismiss on qualified immunity grounds when the complaint fails to allege the violation of a clearly established constitutional right." *Id.* (citation modified).

The Officer Defendants argue that they acted within the course and scope of their discretionary authority, and therefore the burden lies on the Plaintiff to demonstrate why qualified immunity should not apply. (Br. in Supp. of Officer Defs.' Mot. to Dismiss, at 9). The Plaintiffs do not dispute this burden shifting. Government officials act within their discretionary authority if the actions were "(1) undertaken pursuant to the performance of [their] duties and (2) within the scope of [their] authority." *Jones v. City of Atlanta*, 192 F. App'x 894, 897 (11th Cir. 2006) (quoting *Lenz v. Winburn*, 51 F.3d 1540, 1545 (11th Cir. 1995)). Conduct associated with the charging and arrest of an individual is generally within the discretionary authority of a police officer. *See Wood v. Kesler*, 323 F.3d 872, 877 (11th Cir. 2003). Accordingly, the burden falls on the Plaintiff to show why qualified immunity is inappropriate.

The Eleventh Circuit adopted the Supreme Court's two-part test to evaluating a claim of qualified immunity in *Lee*. 284 F.3d at 1194. The first question is, "taken in the light most favorable to the party asserting the injury, do the facts alleged show the officer's conduct violated a constitutional right?" *Id.* (quoting *Saucier v. Katz*, 533 U.S. 194, 201 (2001)) (citation modified). "If a constitutional right would have been violated under the *plaintiff's* version of the facts," the court next determines "whether the right was clearly established."[8] *Id.* (quoting *Saucier*, 533 U.S. at 201). This inquiry must be

---

[8] The Court has the discretion to address these two prongs in either order in light of the circumstances of a particular case. *Pearson v. Callahan*,

undertaken "in light of the specific context of the case, not as a broad general proposition." *Id.* (quoting *Saucier*, 533 U.S. at 201). Here, the Officer Defendants assert qualified immunity against the Plaintiff's excessive force, illegal seizure, and failure to protect claims. The Court looks at each in turn.

### a. Excessive Force (Count 6)

"The Fourth Amendment's freedom from unreasonable searches and seizures encompasses the plain right to be free from the use of excessive force in the course of an arrest." *Lee*, 284 F.3d at 1197 (citing *Graham v. Connor*, 490 U.S. 386, 394-95 (1989)). Where the kind of force is not categorically unconstitutional, a court must then ask whether the amount of force utilized was excessive. *See Charles*, 18 F. 4th at 699. "In order to determine whether the amount of force used was proper, a court must ask 'whether the officer's conduct is objectively reasonable in light of the facts confronting the officer.'" *Saunders v. Duke*, 766 F.3d 1262, 1267 (11th Cir. 2014) (citation omitted).

As alleged in the Second Amended Complaint, the Officer Defendants used physical force on the Plaintiff to cause his injuries in the course of his arrest. An officer's right to make an arrest carries with it the right to use some degree of physical coercion to effect the arrest. *Graham*, 490 U.S. at 396. Therefore, the kind of force used by the Officer Defendants is not categorically unconstitutional.

---

555 U.S. 223, 236 (2009) (abrogating *Saucier* with regard to the mandatory sequencing of these two prongs).

Turning to the question of whether the force used by the Officer Defendants was excessive, "the reasonableness of a particular use of force must be judged from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight." *Saunders*, 766 F.3d at 1267 (quoting *Graham*, 490 U.S. at 396 (quotation marks omitted)). "Determining whether the force used to effect a particular seizure is 'reasonable' under the Fourth Amendment requires a careful balancing of the nature and quality of the intrusion on the individual's Fourth Amendment interests against the countervailing governmental interests at stake." *Id.* (quoting *Graham*, 490 U.S. at 396 (quotation marks omitted)). "This objective analysis 'requires careful attention to the facts and circumstances of each particular case, including the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight." *Id.* (quoting *Graham*, 490 U.S. at 396). "Other considerations are 'the need for the application of force, the relationship between the need and the amount of force used, and the extent of the injury inflicted.'" *Id.* (citation omitted).

Here, the Plaintiff focuses on three instances as the primary basis for his excessive force claim: when (1) Defendant Monahan he shoved the Plaintiff backwards toward the stairway; (2) Defendant Monaham performed an "armbar-takedown" on the Plaintiff; and (3) the Officer Defendants "slammed [the Plaintiff's] head into the concrete . . . then thrashed his . . . body around."

(*See* 2d Am. Compl. ¶¶ 289-91). The Officer Defendants argue, based on their own interpretation of the Video, that none of these interactions constitute excessive force. Noting the Video's limitations with regard to audio and context, the Court finds the factual allegations within the Second Amended Complaint plausible. The Court can only determine certain information from the Video without imputing any assumptions.

The Video shows that Officer Monahan briskly approached the Plaintiff soon after the Plaintiff's conversation with Manager Gillis. (*See* Br. in Supp. of Officer Defs.' Mot. to Dismiss, Ex. A ("Security Footage of Incident"), at 00:01:20-00:01:25). Officer Monahan then directs the Plaintiff and an accompanying friend to the edge of the top of a staircase by placing his hands on both individuals. (*See id.* at 00:01:25-00:01:26). Soon after doing so, Officer Monahan appears to push the Plaintiff in the direction of the staircase while talking to the accompanying friend, causing the Plaintiff to stumble. (*See id.* at 00:01:26-00:01:28). Officer Monahan at this point has taken the position where the top stair of the staircase would be. (*See id.* at 00:01:29). The Plaintiff steps back up the staircase and appears to grab the left arm of Officer Monahan on the way up, prompting Officer Monahan to perform the presumed "arm-bar takedown." (*See id.* at 00:01:29-00:01:35). After this point, the Officer Defendants block the angle from which the Court can observe the third alleged instance of excessive force as they appear to secure the Plaintiff and put handcuffs on him. (*See id.* at 00:01:37-00:02:02). However, the Plaintiff appears

to be unable to stand as the Officer Defendants attempt to get the Plaintiff to his feet. (*See id.* at 00:02:02-00:02:06).

With these observations supplemented by the Second Amended Complaint, the Court finds the Officer Defendants' arguments unpersuasive. At this stage of the litigation, the *Graham* factors suggest that the force used was excessive. First, the Plaintiff has committed no crime as of the time of removal from the bar. (*See* 2d Am. Compl. ¶ 274). The Officer Defendants were only called to manage the Plaintiff's removal from the bar, and the Video shows no crime being committed before any force was used. Accordingly, that factor heavily counsels against the use of force.

The second factor—whether the individual is an immediate threat to the officers—cuts both ways. The Plaintiff does appear agitated throughout the Video and Officer Monahan does approach him after a tense conversation with Manager Gillis. However, neither the Video nor the facts within the Second Amended Complaint show that the Plaintiff was an immediate threat to the Officer Defendants. While the Plaintiff's contact with Officer Monahan coming up the stairs *could* be construed as creating an immediate threat to Officer Monahan's safety, the Plaintiff only appears to place his hand on Officer Monahan's left shoulder. While the Officer Defendants argue that the Plaintiff's contact with Officer Monahan over the Video was a shove, the Video does not undisputably show such contact. (Br. in Supp. of Officer Defs.' Mot. to Dismiss, at 14). Because the Plaintiff alleges that any contact was to stabilize

28

himself from falling down the stairs within the Second Amended Complaint, the Court must treat the contact as, at best, a mistaken belief of immediate danger by Officer Monahan. Therefore, the second factor suggests that some amount of force was acceptable.

As to the third factor, there is no indication that the Plaintiff is resisting arrest because the arrest only occurs after the arm-bar takedown, where the Plaintiff appears unable to move. Therefore, the third factor counsels against the use of force as well. Combining the three factors, the Court concludes that the Officer Defendants' use of force is plausibly excessive at the Motion to Dismiss stage. While the analysis of the second factor allows for some use of force, the Officer Defendants' conduct, as alleged, exceeds reasonable force. Furthermore, because the Video does not clearly demonstrate the facts underlying the third instance of excessive force, the Court relies on the facts of the incident as described by the Plaintiff in the Second Amended Complaint. *See Baker*, 67 F.4th at 1277 (11th Cir. 2023).

The Officer Defendants still attack each instance of conduct head-on by arguing that the first shove was *de minimis* force and that an arm-bar takedown is not categorically excessive force. (*See* Br. in Supp. of Officer Defs.' Mot. to Dismiss, at 13 n. 7, 14 (citing *Taylor v. Taylor*, 649 F. App'x 737, 746 (11th Cir. 2016), then citing *Horn v. Barron*, 720 F. App'x 557, 565 (11th Cir. 2018)). However, the Court's conclusion takes the sequence of conduct as a whole instead of analyzing the situation piecemeal. The first and second

instances of force, combined with the third, constitutes excessive force against the Plaintiff as alleged in the Second Amended Complaint.

Even if the Court were to address each instance separately, the arm-bar takedown would still constitute excessive force. In *Horn*, the Eleventh Circuit's non-precedential opinion only held that an arm-bar takedown did not constitute excessive force because the plaintiff was not restrained at all at the time. *See Horn*, 720 F. App'x at 564. Here, as alleged by the Second Amended Complaint and corroborated by the Video, Officer Monahan had the Plaintiff and his friend temporarily detained at the edge of a staircase. The restraint here is more than the factual distinction drawn in *Horn*. Thus, the force used in the arm-bar takedown is excessive.

Finally, the Court briefly turns to the "clearly established" prong. The Eleventh Circuit has found that a right is "clearly established," for qualified immunity purposes, by one of three ways: (1) "case law with indistinguishable facts clearly establishing the constitutional right;" (2) "a broad statement of principle within the Constitution, statute, or case law that clearly establishes a constitutional right;" or (3) "conduct so egregious that a constitutional right was clearly violated, even in the total absence of case law." *T.R. by and through Brock v. Lamar Cnty. Bd. Of Educ.*, 25 F.4th 877, 883 (11th Cir. 2022) (citation omitted). Under the third way, qualified immunity can only be overcome if "the standards set forth in *Graham* and our own case law "inevitably lead every reasonable officer in the defendant's position to conclude the force was

unlawful." *Lee*, 284 F.3d at 1199 (citation modified). Subsequently, the Eleventh Circuit has consistently held that the "gratuitous use of force when a criminal suspect is not resisting arrest constitutes excessive force" under the third way. *Saunders*, 766 F.3d at 1267 (quotation marks and citation omitted).

Here, the *Graham* factors clearly counsel a finding that the Officer Defendants' force was excessive. Additionally, because the Plaintiff was not resisting arrest under the allegations of the Second Amended Complaint, the gratuitous force used by the Officer Defendants violates precedential decisions by the Eleventh Circuit. Therefore, the Officer Defendants violated a clearly established constitutional right. Accordingly, the Officer Defendants are not entitled to qualified immunity at this stage of the litigation.

### b. Illegal Seizure (Count 7)

"Under the Fourth Amendment, an individual has a right to be free from unreasonable searches and seizures and an arrest is a seizure of the person." *Case v. Eslinger*, 555 F.3d 1317, 1326 (11th Cir. 2009) (citation modified). "A seizure occurs for Fourth Amendment purposes, however, only when, by means of physical force or a show of authority, a person's freedom of movement is restrained." *United States v. Perez*, 443 F.3d 772, 778 (11th Cir. 2006) (citation modified). "The 'reasonableness' of a seizure or arrest under the Fourth Amendment turns on the presence or absence of probable cause." *Case*, 555 F.3d at 1326 (citation omitted). "The existence of probable cause at the time of

arrest constitutes an absolute bar to a section 1983 action for false arrest." *Id.* at 1326-27 (citation modified).

"Probable cause to arrest exists when law enforcement officials have facts and circumstances within their knowledge sufficient to warrant a reasonable belief that the suspect had committed or was committing a crime." *Id.* at 1327 (quotation marks and citation omitted). It requires there to be a "probability or substantial chance of criminal activity, not an actual showing of such activity." *Id.* (quoting *Illinois v. Gates*, 462 U.S. 213, 245 n. 13 (1983)). "Probable cause does not require overwhelmingly convincing evidence, but only 'reasonably trustworthy information.'" *Id.* (citation omitted).

"If a constitutional violation occurred because the officer lacked probable cause, [a court then] . . . consider[s] whether arguable probable cause existed." *Id.* "The officer may still be shielded from liability because his 'actions did not violate 'clearly established statutory or constitutional rights of which a reasonable person would have known''" *Id.* (quoting *Hope v. Pelzer*, 536 U.S. 730, 739 (2002)). "Absent probable cause, an officer is still entitled to qualified immunity if arguable probable cause existed." *Id.* (citation omitted). "Arguable probable cause exists where reasonable officers in the same circumstances and possessing the same knowledge as [a defendant] could have believed that probable cause existed to arrest." *Id.* (citation modified).

The Officer Defendants argue that none of the contacts at issue constitute an illegal seizure or arrest that defeats the application of qualified

immunity. (*See* Br. in Supp. of Officer Defs.' Mot. to Dismiss, at 17-19). The Plaintiff, in response, points to multiple sets of facts to argue that they have established the necessary facts required to overcome qualified immunity. (*See* Pl.'s Br. in Opp'n to Officer Defs.' Mot. to Dismiss, at 14-16). But a "district court is not required to accept as true [the plaintiff's] conclusions of law when considering a Rule 12(b)(6) motion to dismiss." *Solis-Ramirez v. U.S. Dept. of Justice*, 758 F.2d 1426, 1429 (11th Cir. 1985) (citation omitted). Accordingly, although the Plaintiff does state in the Second Amended Complaint that the Officer Defendants' conduct was done "without probable cause, arguable probable cause, reasonable suspicion, or arguable reasonable suspicion," the Court is not required to accept this legal conclusion as true when considering the application of qualified immunity. (Pl.'s Br. in Opp'n to Officer Defs.' Mot. to Dismiss, at 14 (citing 2d Am. Compl. ¶ 330)).

The Court now turns to the instances of contact to determine whether there was probable cause or arguable probable cause. After the Plaintiff and Manager Gillis finish what appears to be a heated conversation, Officer Monahan promptly pushes the Plaintiff and his friend to the edge of a staircase. (*See* Security Video of Incident, at 00:01:24-00:01:26). This push appears to make the Plaintiff stumble backwards on the staircase. (*See id.* at 00:01:26-00:01:27; 2d Am. Compl. ¶ 313-14). Such conduct fits the definition of a seizure, as Officer Monahan uses physical force to restrict the Plaintiff's freedom of movement by pushing him towards the edge of a staircase, with

little room for comfort. Construing the facts presented in the Video in the light most favorable to the Plaintiff, the Plaintiff does not appear to be free to move past Officer Monahan or go down the staircase, as Officer Monahan has used physical force to keep the Plaintiff where he is. The subsequent instances of contact between Officer Monahan and the Plaintiff continue from this initial seizure. From the time of the initial shove to the arm-bar takedown and alleged thrashing of the Plaintiff, the Officer Defendants used physical force to restrain the Plaintiff from having freedom of movement. Accordingly, the Plaintiff was seized from initial contact between Officer Monahan and the Plaintiff.

The question then is whether the Officer Defendants had probable cause or arguable probable cause to seize the Plaintiff. The Officer Defendants argue that there existed actual and arguable probable cause for the arm-bar takedown and subsequent seizure under a theory that the Plaintiff committed simple battery and disorderly conduct. (*See* Br. in Supp. of Officer Defs.' Mot. to Dismiss, at 18-19). Under Georgia law, "[a] person commits the offense of simple battery when he or she either . . . (1) [i]ntentionally makes physical contact of an insulting or provoking nature with the person of another; or (2) [i]ntentionally causes physical harm to another." O.C.G.A. § 16-5-23(a). Additionally, "[a]ny person who commits the offense of simple battery against a police officer, correction officer, or detention officer engaged in carrying out official duties shall, upon conviction thereof, be punished for a misdemeanor of

a high and aggravated nature." O.C.G.A. § 16-5-23(e). A person commits disorderly conduct in Georgia when a person "[a]cts in a violent and tumultuous manner toward another person" where such person is placed in reasonable fear of person or property or when he uses certain words that threatens an "immediate breach of the peace" without provocation. O.C.G.A. § 16-11-39(a).

The Officer Defendants once more put forth their version of events from the Video to argue that the Plaintiff was the aggressor prior to the arm-bar takedown, creating arguable or actual probable cause. Again, this approach improperly construes ambiguities within the Video against the Plaintiff and is not proper on a Motion to Dismiss. *See Baker*, 67 F.4th at 1277. The Video shows the Plaintiff placing his hands on Officer Monahan's arm when moving up the staircase and the Second Amended Complaint explains that the Plaintiff was trying to keep from falling. (*See* Security Video of Incident, at 00:01:29-00:01:31; 2d Am. Compl. ¶¶ 314-15). There is no clear evidence that any contact by the Plaintiff was intentional or that it was made in any violent or tumultuous manner. Therefore, the Court will not grant the protection of qualified immunity to the Officer Defendants as to Count 7 at this time. The allegations in the Second Amended Complaint, along with the Video, allege sufficient facts to show that the Officer Defendants violated a clearly established constitutional right against illegal seizure sufficient to warrant denial of the Officer Defendants' Motion to Dismiss as to this Count.

### c. Failure to Protect (Count 8)

The Fourteenth Amendment forbids the State from depriving individuals of life, liberty, or property without "due process of law." *See Daniel v. Hancock Cnty. Sch. Dist.*, 626 F. App'x 825, 832 (11th Cir. 2015); *Powers v. CSX Transp., Inc.*, 188 F. Supp. 2d 857, 861 (S.D. Ala. 2002) (citing *DeShaney v. Winnebago Cnty. Dep't of Soc. Servs.*, 489 U.S. 189, 197 (1989)). A plaintiff raising a section 1983 claim under a theory of a purported failure to protect must show that he was "deprived of a federal right by a person acting under color of state law." *Walker v. Dixon*, 840 F. App'x 397, 400 (11th Cir. 2020) (quotation marks and citation omitted).

Under this theory, "the Constitution may require the government affirmatively to protect an individual from private violence when the individual is in custody." *Powers*, 188 F. Supp.2d at 861 (citing *DeShaney*, 489 U.S. at 199-200). "Any theory that a 'special relationship' short of custody could support an affirmative duty to protect individuals from private harm was laid to rest in *Collins v. City of Harker Heights*, 503 U.S. 115, 112 [ ] (1992)." *Id.* at 862 (citing *White v. Lemacks*, 183 F.3d 1253, 1257 (11th Cir. 1999)). "Under *Collins*, government officials violate the substantive due process rights of a person not in custody *only* by conduct 'that can properly be characterized as arbitrary, or conscience shocking, in a constitutional sense.'" *Id.* (quoting *White*, 183 F.3d at 1258 (quotation marks omitted)); *see Daniel*, 626 F. App'x at 832 ("When a claim is premised on the government's failure to protect an

individual not in custody, the harm suffered will seldom, if ever, be cognizable under the Due Process Clause." (citation modified)). "'Only the most egregious official conduct' rises to this level." *Walker*, 840 F. App'x at 403 (quoting *Cnty. of Sacramento v. Lewis*, 523 U.S. 833, 846 (1998)). "This standard 'is to be narrowly interpreted and applied' . . . such that 'even intentional wrongs seldom violate' due process." *Id.* (quoting *White*, 183 F.3d at 1259, then quoting *Waddell v. Hendry Cnty. Sheriff's Office*, 329 F.3d 1300, 1305 (11th Cir. 2003)).

When the issue of qualified immunity arises here, if a police officer "fails or refuses to intervene when a constitutional violation such as an unprovoked beating takes place in his presence, the officer is directly liable under Section 1983." *Sebastian v. Ortiz*, 918 F.3d 1301, 1312 (11th Cir. 2019) (quotation marks and citation omitted). "To be held liable, the officer must both be 'in a position to intervene' and 'fail to do so.'" *Id.* (brackets and citation omitted). "Of course, there must also be an underlying constitutional violation." *Id.* (citation omitted).

Here, the Officer Defendants argue that Officer Whitley cannot be held responsible under Section 1983 because Officer Whitley was not in a position to intervene for either the initial shove or the arm-bar takedown. (Br. in Supp. of Officer Defs.' Mot. to Dismiss, at 20-21). Additionally, the Officer Defendants argue that, even if he was, the failure to protect in this instance does not rise to conduct that "shocks the conscious." (*Id.* at 21). The Court agrees. The Video clearly shows that Officer Monahan approaches the Plaintiff alone. (*See*

Security Video of Incident, at 00:01:17-00:01:24). The pertinent events described in the Second Amended Complaint occur after that. (*See id.* at 00:01:25-00:01:33). Officer Whitley only begins his approach to the scene when Officer Monahan begins putting his hands on the Plaintiff and arrives soon after the arm-bar takedown, moving a bystander out of the way on the approach. (*See id.*). Despite the allegations contained within the Second Amended Complaint, the Video clearly shows that Officer Whitley could not have intervened until after the arm-bar takedown performed by Officer Monahan. Therefore, because the Plaintiff cannot show that Officer Whitley violated a clearly established constitutional right, Officer Whitley is entitled to qualified immunity as to the failure to protect claim. Accordingly, the Court dismisses Count 8 as it pertains to Officer Whitley.

### 3. Official Immunity

The Officer Defendants argue for their dismissal from the Plaintiffs' state law claims under the state-law doctrine of official immunity. "The doctrine of official immunity, also known as qualified immunity, offers public officers and employees limited protection from suit in their personal capacity." *Cameron v. Lang*, 274 Ga. 122, 123 (2001) (citation omitted). "Qualified immunity 'protects individual public agents from personal liability for discretionary actions taken within the scope of their official authority, and done without [willfulness], malice, or corruption.'" *Id.* (citation omitted). "Under Georgia law, a public officer or employee may be personally liable only

38

for ministerial acts negligently performed or acts performed with malice or an intent to injure." *Id.* (citation omitted). Accordingly, a court must first determine whether a public officer was engaged in ministerial or discretionary acts, then apply the appropriate standard. *See Williams v. Fulton Cnty. Sch. Dist.*, 181 F. Supp. 3d 1089, 1142 (N.D. Ga. 2016). The Court will do so here.

"A ministerial act is commonly one that is simple, absolute, and definite, arising under conditions admitted or proved to exist, and requiring merely the execution of a specific duty." *Grammens v. Dollar*, 287 Ga. 618, 619 (2010) (citation omitted). "A discretionary act, however, calls for the exercise of personal deliberation and judgment, which in turn entails examining the facts, reaching reasoned conclusions, and acting on them in a way not specifically directed." *Id.* (citation omitted). "Whether the act of a public official is ministerial or discretionary is determined by the facts of each individual case . . . particularly the facts specifically relevant to the official's act or omission from which the alleged liability arises." *Id.* at 620 (citation omitted). "The decision to make a warrantless arrest . . . is considered a discretionary act within the scope of the officer's official functions." *Mercado v. Swoope*, 340 Ga. App. 647, 650 (2017). Because the events are related to a warrantless arrest conducted by the Officer Defendants, the Court finds that their actions were discretionary acts. The Court does not owe any deference to the Plaintiff's allegation that the Officer Defendants' acts were ministerial because such an allegation is a conclusion of law rather than a fact. *See Solis-Ramirez*, 758 F.2d

at 1429. Therefore, the proper standard of review for whether the Officer Defendants are entitled to official immunity is whether their acts were performed with willfulness, malice, or corruption. *See Cameron*, 274 Ga. at 123.

Under this standard, a court inquires into whether an officer acted with actual malice or actual intent to injure the plaintiff. *See Mercado*, 340 Ga. App. at 650. "'Actual malice' requires a deliberate intention to do wrong." *Id.* (citing *Merrow v. Hawkins*, 266 Ga. 390, 391 (1996)). "A deliberate intention to do wrong such as to constitute the actual malice necessary to overcome official immunity must be the intent to cause the harm suffered by the plaintiff." *Id.* (citation modified). "And an actual intent to cause injury has been defined as 'an actual intent to cause harm to the plaintiff, not merely an intent to do the act purportedly resulting in the claimed injury.'" *Id.* (citation omitted). If an officer has probable cause to make a lawful warrantless arrest, then, even if the arrest was mistaken, the officer is still entitled to official immunity. *See id.* at 651. A plaintiff has a "very high burden with respect to malice." *Williams*, 181 F. Supp. 3d at 1146.

This Court has already held the Plaintiff plead sufficient facts in his Second Amended Complaint to find that the Officer Defendants lacked actual or arguable probable cause to arrest the him. Additionally, the Second Amended Complaint alleges that the Officer Defendants engaged in such conduct without any sufficient provocation by the Plaintiff, which is not clearly

refuted by the Video. This extends to the alleged abuse perpetrated by the Officer Defendants after the arrest since the Video has no clear angle to determine the veracity of this conduct as alleged in the Second Amended Complaint. Therefore, at this stage of the litigation, the Court declines to grant the Officer Defendants official immunity from all state-law claims.

### 4. False Arrest, False Imprisonment, and Malicious Prosecution (Counts 3-5)

The Officer Defendants argue that the Plaintiff's claims for false arrest, false imprisonment, and malicious prosecution are too broad and ask the Court to limit these claims. (*See* Br. in Supp. of Officer Defs.' Mot. to Dismiss, at 24-25).[9] The Plaintiff disagrees, arguing that they are entitled to argue alternative claims at the pleading stage. (*See* Pl.'s Br. in Opp'n to Officer Defs.' Mot. to Dismiss, at 24).

Under Georgia law, "[f]alse imprisonment is the unlawful detention of the person of another, for any length of time, whereby such person is deprived of his personal liberty." O.C.G.A. § 51-7-20. An action of false arrest may be sustained when "[a]n arrest [is made] under process of law, without probable

---

[9] The Officer Defendants also argue that the existence of probable cause to arrest the Plaintiff bars the Plaintiff's claims for false arrest and malicious prosecution. (*See id.* at 25). Indeed, under Georgia law, a plaintiff must demonstrate that the defendant's conduct related to a claim for false arrest or malicious prosecution that was done without probable cause. *See* O.C.G.A. §§ 51-7-1, 51-7-40. The Court has earlier held that the Plaintiff has alleged sufficient facts to demonstrate that any arrest of the Plaintiff was done without probable cause. The Court sees no need to rehash its analysis here. Therefore, this argument fails.

cause [and] made maliciously." O.C.G.A. § 51-7-1. An action for malicious prosecution may be brought when "[a] criminal prosecution . . . is carried on maliciously and without any probable cause . . . which causes damage to the person prosecuted." O.C.G.A. § 51-7-40.

Georgia law recognizes a distinction between false imprisonment and false arrest. "An arrest made pursuant to a warrant is an arrest 'under process of law'" *Sheffield v. Futch*, 354 Ga. App. 661, 665 (2020) (citation omitted). "Thus, 'the key distinction between false arrest and false imprisonment is whether the person was detained using a warrant or not.'" *Id.* (citation modified). An additional distinction exists between false arrest and malicious prosecution. "If after the arrest the warrant is dismissed or not followed up, the remedy is for false arrest." *Id.* (citation modified). "But if the action is carried on to a prosecution, an action for malicious prosecution is the exclusive remedy, and an action for false arrest will not lie." *Id.* (citation modified). "The distinction is important because malicious prosecution and false arrest are mutually exclusive; if one right of action exists, the other does not." *Id.* (citation modified).

The Plaintiff argues that different conduct supports each of their three claims and that further discovery is necessary before adjudicating which claims should survive. (*See* Pl.'s Br. in Opp'n to Officer Defs.' Mot. to Dismiss, at 24). But the Plaintiff does not explain how the conduct alleged within the Second Amended Complaint differs between the three counts, especially where

he opts to repeat the factual allegations within each count of the Second Amended Complaint without highlighting the facts applicable to each claim. Further discovery is unnecessary on this issue because the facts presented by the Plaintiff alone do not sustain his broad claims for false imprisonment, false arrest, and malicious prosecution.

That is not to say that no facts can sustain the Plaintiff's claims. Specifically, the Second Amended Complaint alleges two separate arrests by the Officer Defendants, one without a warrant near PBR Atlanta and one with a warrant at the hospital after the events that transpired between the Officer Defendants and the Plaintiff. (*See e.g.* 2d Am. Compl. ¶¶ 209-216). Accordingly, the Plaintiff would be able to maintain an action against the Officer Defendants for false imprisonment based on the warrantless arrest and false arrest based on the arrest with a warrant. But because the Plaintiff also brings an action for malicious prosecution against the Officer Defendants, the Plaintiff cannot bring an action for false arrest because the prosecution followed the false arrest, and the remedies are mutually exclusive. *See Sheffield*, 354 Ga. App. at 665.

Therefore, the Plaintiff's false arrest claim against the Officer Defendants in Count 4 is hereby dismissed. The Plaintiff's false imprisonment claim in Count 3 may survive to the extent that the claim arises out of the initial warrantless arrest outside of PBR Atlanta. Additionally, the Plaintiff's malicious prosecution claim in Count 5 also survives to the extent that the

claim arises out of the arrest pursuant to a warrant when the Plaintiff was at the hospital.

## C. County Defendants' Motion to Dismiss

The County Defendants make several arguments arguing for dismissal of the Plaintiff's claims against them. First, the County Defendants argue for the dismissal of Officers Cox, Monahan, and Whitley, in their official capacities, as improper parties. (*See* Br. in Supp. of Cnty. Defs.' Mot. to Dismiss, at 4-5 [Doc. 66]). Second, the County Defendants argue that the Plaintiff has failed to adequately allege that Cobb County is liable for the conduct-at-issue (*See id.* at 5-25). The Court addresses each argument in turn.

### 1. Dismissal of Officers Monahan, Whitley, and Cox

The County Defendants ask the Court to dismiss Officers Monahan and Whitley, in their official capacities, because the Section 1983 claims against them are actually against Cobb County. (*See* Br. in Supp. of Cnty. Defs.' Mot. to Dismiss, at 4-5). "Claims against individuals in their official capacities 'generally represent only another way of pleading an action against an entity of which an officer is an agent,' and are 'in all respects other than name, to be treated as a suit against the entity.'" *Rodemaker v. City of Valdosta Bd. Of Educ.*, 110 F.4th 1318, 1328 (11th Cir. 2024) (quoting *Kentucky v. Graham*, 473 U.S. 159, 165-66 (1985)). Where public officers are sued in their official capacities, the Eleventh Circuit has at least once affirmed a district court's decision to dismiss the individual officers to avoid redundancy. *See, e.g., Busby*

44

*v. City of Orlando*, 931 F.2d 764, 776 (11th Cir. 1991) (finding that a district court did not err in granting a directed verdict to individual defendants sued in their official capacities). Courts in this district have dismissed individual plaintiffs on this basis at the motion to dismiss stage. *See, e.g., Guerra v. Rockdale Cnty., Ga.*, 420 F. Supp. 3d 1327, 1342 (N.D. Ga. 2019).

Here, the Plaintiff makes no real argument against the dismissal of Officers Whitley and Monahan in their official capacities, acknowledging that any claims against the County Defendants in their official capacities are equivalent to claims against Cobb County. (Pl.'s Br. in Opp'n to Cnty. Defs.' Mot. to Dismiss, at 12 [Doc. 77]). Accordingly, all claims against Officers Whitley and Monahan in their official capacities are dismissed.

The County Defendants also argue that Officer Cox should be dismissed from the suit because "former official capacity claims are meaningless." (Br. in Supp. of Cnty. Defs.' Mot. to Dismiss, at 5). The County Defendants make this argument by citing to the Second Circuit in *Mathie v. Fries*, 121 F.3d 808 (2d Cir. 1997), where the court found error in a damage award against a defendant "in his former official capacity." *Id.* at 817-18. The Second Circuit stated that "[a] claim against a person 'in his former official capacity' has no meaning." *Id.* at 818. The court only made that statement to explain that a damages award against a defendant can only be imposed in his individual capacity, not in any official capacity. *See id.* Taking a single line from an out-of-circuit opinion and applying it to the instant case completely out of context would be wholly

45

erroneous. In any case, cases exist within the Eleventh Circuit that name defendants in their former official capacities. *See, e.g., Stone v. Peacock*, 968 F.2d 1163 (11th Cir. 1992). Therefore, the Court will not dismiss Officer Cox from this action.

### 2. *Monell* Claim

The Plaintiff brings a *Monell* claim against the remaining County Defendants under 42 U.S.C. § 1983. Section 1983 imposes liability on "every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State . . . causes [someone] to be subjected . . . to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws." 42 U.S.C. § 1983. "[M]unicipalities and other local governmental bodies are 'persons' within the meaning of [Section] 1983." *Smothers v. Childers*, 159 F.4th 922, 930 (11th Cir. 2025) (quoting *Bd. Of Cnty. Comm'rs of Bryan Cnty. v. Brown*, 520 U.S. 397, 403 (1997) (quotation marks omitted)).

"Section 1983 does not authorize vicarious liability against a municipality." *Id.* The Eleventh Circuit has held that a municipality can only be liable in three situations: "first and second, 'when execution of a government's [(a)] policy or [(b)] custom . . . inflicts the injury" the plaintiff suffered . . . and third, when a municipal official 'with final policy-making authority in the area of the act or decision makes the challenged act or decision.'" *Id.* at 930-31 (quoting *Monell v. Dep't of Soc. Servs. Of the City of New York*, 436 U.S. 658, 694 (1978), then quoting *Cuesta v. Sch. Bd. Of*

*Miami-Dade Cnty.*, 285 F.3d 962, 968 (11th Cir. 2002)). This is referred to as the "policy or custom" requirement. *Id.* at 931.

"Besides the policy or custom requirement, though, a litigant must show two other things." *Id.* "First, [he] must establish that the municipality undertook the challenged policy, custom, act, or decision 'with the requisite degree of culpability.'" *Id.* (quoting *Brown*, 520 U.S. at 404). "That is, *Monell* requires the county to have acted 'with deliberate indifference to its known or obvious consequences.'" *Id.* (citation omitted). "And second, [he] must point to a 'direct causal link between the municipal action and the deprivation of federal rights.'" *Id.* (citation omitted). "So the plaintiff must show that 'through its *deliberate* conduct, the municipality was the 'moving force' behind the injury alleged.'" *Id.* (quoting *Brown*, 520 U.S. at 404). "Putting it all together, then, to establish a *Monell* claim under a custom or policy theory, [the Plaintiff] must show '(1) that [his] constitutional rights were violated; (2) that [Cobb County] had a custom or policy that constituted deliberate indifference to that constitutional right; and (3) that the policy or custom caused the violation.'" *Id.* (citation omitted).

The Plaintiff makes a *Monell* claim against the County Defendants in Count 9 of the Second Amended Complaint. Specifically, the Plaintiff alleges that Cobb County's policies allowed the violation of the Plaintiff's rights or, alternatively, that Cobb County ratified the customs and practices of police officers within the department. (*See* 2d Am. Compl. ¶¶ 428-43). The County

47

Defendants argue that neither theory is sustainable and that the claim should be dismissed. (*See* Br. in Supp. of Cnty. Defs.' Mot. to Dismiss, at 5-25). The Court considers each theory in turn.

### a. Policy

The County Defendants put forth several arguments for why the Plaintiff has failed to allege any actionable policy to bring a *Monell* claim. These arguments can be reduced into two general buckets. First, the County Defendants argue that the Plaintiff's allegations related to any explicit Cobb County policy are overbroad and generic. (*See* Br. in Supp. of Cnty. Defs.' Mot. to Dismiss, at 14-15). Second, the County Defendants argue that, to the extent that the Plaintiff claims an implicit policy existed, the Plaintiff's description of prior incidents within the Second Amended Complaint is unfounded and irrelevant. (*See id.* at 15-20). In response, the Plaintiff does not argue the existence of an explicit policy but instead argues that an implicit policy exists. (*See* Pl.'s Br. in Opp'n to Cnty. Defs.' Mot. to Dismiss, at 13-14). Specifically, the Plaintiff argues that he has alleged an actionable policy through Cobb County's failure-to-train its officers, causing a constitutional deprivation (*See id.* at 14-18).

"[M]unicipalities, like supervisors, may be held liable for failure to train their employees." *Bridges v. Poe*, 155 F.4th 1302, 1318 (11th Cir. 2025) (citing *Connick v. Thompson,* 563 U.S. 51, 61 (2011)). The Eleventh Circuit, in adherence to the Supreme Court, has held that "the inadequacy of police

training may serve as the basis for [Section] 1983 liability only where the failure to train amounts to deliberate indifference to the rights of persons with whom the police come into contact." *Gold v. City of Miami*, 151 F.3d 1346, 1350 (11th Cir. 1998) (quoting *City of Canton v. Harris*, 489 U.S. 378, 388 (1989)). "Only where a failure to train reflects a 'deliberate' or 'conscious' choice by a municipality . . . can a city be liable for such a failure under [Section] 1983." *Id.* (quoting *City of Canton*, 489 U.S. at 389). In order for a plaintiff to allege that a municipality made a "deliberate or conscious choice" or that there was "deliberate indifference," there must be factual allegations "that the municipality made a deliberate choice not to take any action." *Id.* at 1350-51 (citing *Brown*, 520 U.S. at 407-10).

Accordingly, for a municipality to be liable under Section 1983 under a failure-to-train theory, "a plaintiff must demonstrate that: (1) the government inadequately trained or supervised its employees; (2) the failure to train is an official policy; and (3) the policy caused the employees to violate the plaintiff's rights." *Thomas ex rel. Thomas v. Roberts*, 261 F.3d 1160, 1173 (11th Cir. 2001), *vacated sub nom. Thomas v. Roberts*, 536 U.S. 953 (2002), *opinion reinstated*, 323 F.3d 950 (11th Cir. 2003). "A need for training and/or supervision will be proven when there is sufficient evidence that: (1) the government's employees 'face clear constitutional duties in recurrent situations'; or (2) 'a pattern of constitutional violations exists such that the

government knows or should know that corrective measures are needed.'" *Id.* (citation modified).

Here, the County Defendants make a number of arguments to contest the Plaintiff's failure-to-train theory. First, the County Defendants argue that the "completion of state-mandated training is sufficient to avoid liability based on training deficiencies." (Br. in Supp. of Cnty. Defs.' Mot. to Dismiss, at 13, 23). Next, the County Defendants go through each instance of alleged prior misconduct to explain how several instances fail to demonstrate notice to Cobb County. (*See id.* at 15-22).

The County Defendants' arguments miss the mark when considering the procedural posture of this matter. While such arguments could be decided at a later stage of litigation, the Court must accept the Plaintiffs' factual allegations as true and view them in the light most favorable to the Plaintiff when considering a motion to dismiss. *See Quality Foods*, 711 F.2d at 994-95. Almost all cases cited by the County Defendants relate to proceedings where the evidentiary record has been further developed, such as after trial or on a motion for summary judgment. To be clear, it is possible that the conduct the Plaintiff relies on will not suffice as notice. Additionally, the training provided to Officers Monahan and Whitley may be sufficient.[10] However, that is not the relevant inquiry here.

---

[10] The County Defendants' argument that a quasi-bright-line rule exists that the use of state-mandated training automatically defeats a failure to train Section 1983 claim lacks support in the law and is wholly unconvincing to the

The Second Amended Complaint details a number of excessive force complaints against Officer Monahan from 2015 to 2021. Specifically, the Second Amended Complaint highlights that there were at least ten complaints of misconduct by Officer Monahan, including two excessive force reports related to his presence at the Premises prior to the Plaintiff's injuries. (*See* 2d Am. Compl. ¶ 413). Additionally, the Second Amended Complaint also alleges that Officer Monahan engaged in improper conduct after the Plaintiff's arrest in 2021. (*See id.* ¶ 417).

Contrary to the County Defendants' contention, the fact that Cobb County determined such complaints were "unfounded" does not automatically invalidate any pattern that may form. (*See id.* ¶ 416). Indeed, determining that the complaints against Officer Monahan lack weight on the basis of an internal investigation at this preliminary stage would not allow a proper inquiry into the validity of those determinations, especially when the Plaintiff alleges that the determination was made improperly. (*See id.*). Additionally, there is no requirement at this stage that the Plaintiff allege any judicial determination of fault. The demonstration of a pattern that plausibly implies notice to Cobb County and its subsequent inaction is enough to resolve the issue in favor of the Plaintiff on this Motion to Dismiss.

---

Court. (*See* Br. in Supp. of Cnty. Defs.' Mot. to Dismiss, at 13-14). Each of the cases cited by the County Defendants involve some evaluation of the adequacy of the training, which is not and cannot be presented on this Motion to Dismiss. Under the Plaintiff's alleged facts, such training would be inadequate.

The allegations then allege that Cobb County failed to train its officers to follow its own policies regarding body-cam usage and de-escalation. (*See id.* ¶¶ 414-15, 419-20). The Second Amended Complaint further suggests that such problems are systemic within the Cobb County Police Department apart from just Officer Monahan. (*See id.* ¶¶ 422-23). On these facts alone, it is plausible that Cobb County inadequately trained its police officers pursuant to an implicit policy, which resulted in a violation of the Plaintiff's rights. *See Thomas*, 261 F.3d at 1173. The Plaintiff's allegations demonstrate a need for training because police officers face clear constitutional duties on a regular basis (which the Officer Defendants may have exceeded through the excessive force claims against them). *See id.* Furthermore, it is plausible that Cobb County would have been on notice of Officer Monahan's prior conduct based on several allegations over the six-year period related to his misconduct. Therefore, the Court will not dismiss the Plaintiff's *Monell* claim because the Second Amended Complaint alleges sufficient facts to sustain the claim under a failure to train theory.

### b. Ratification

The Plaintiff also states that the County Defendants are liable by ratification. (*See* 2d Am. Compl. ¶¶ 431-32). "[A] municipality can be held liable 'on the basis of ratification when a subordinate public official makes an unconstitutional decision and when the decision is then adopted by someone who does have final policymaking authority.'" *Hoefling v. City of Miami*, 811

F.3d 1271, 1279 (11th Cir. 2016) (citation omitted). Generally, there must be evidence that "[t]he final policymaker . . . must ratify not only the decision itself, but also the unconstitutional basis for it." *Matthews v. Columbia Cnty.*, 294 F.3d 1294, 1297-98 (11th Cir. 2002) (citation omitted).

The County Defendants argue that the Plaintiff failed to allege facts that demonstrate that a policymaker ratified the basis of a constitutional violation and therefore the Plaintiff's ratification claim should be dismissed. (*See* Br. in Supp. of Cnty. Defs.' Mot. to Dismiss, at 24-25). This argument is misplaced. The Eleventh Circuit has explicitly held that "identifying and proving that a final policymaker acted on behalf of a municipality is 'an evidentiary standard, and not a pleading requirement.'" *Hoefling*, 811 F.3d at 1280. To state a claim under a ratification theory, all a plaintiff needs to allege is a policy, practice, or custom of the municipality which caused the constitutional injury. *See id.* As explained previously, the Plaintiff has done so here. Therefore, the Plaintiff's ratification theory of liability for his *Monell* claim will not be dismissed.

### D. Braves Defendants' Motion to Dismiss

Finally, the Braves Defendants make three main arguments for dismissal of the claims against them in the Plaintiff's Second Amended Complaint. First, the Braves Defendants argue that the Plaintiff's Second Amended Complaint is a shotgun pleading. (*See* Br. in Supp. of Braves Defs.' Mot. to Dismiss, at 8-10). Second, they argue that the Plaintiff fails to state a

claim against them in Counts 10 (Negligence), 11 (Negligent Hiring, Supervision, and Retention), and 12 (Vicarious Liability). (*See id.* at 11-17). Third, the Braves Defendants argue that all punitive damages claims should be dismissed against them. (*See id.* at 17-18).

Before addressing the substantive arguments, the Court briefly addresses the Braves Defendants' shotgun pleading argument. The Braves Defendants liken the Second Amended Complaint to the complaint in *Foreman v. City of Fort Lauderdale*, 2022 WL 16540180 (S.D. Fla. Oct. 28, 2022), where the court favored dismissal because the complaint failed to set out which charges applied to which defendants and which facts were relevant to each claim. *Id.* at *9. The court in *Foreman* also found an issue with the plaintiff's lack of explanation of how the defendants actually conspired with regard to his conspiracy claim. *Id.* at *10.

The application of *Foreman* to the instant case is erroneous. Although the Court acknowledges the poor formatting of the Second Amended Complaint, the conduct alleged against the Braves Defendants can be determined. For Count 10, the Second Amended Complaint alleges that the Braves Defendants "owned, occupied, maintained, possessed and/or controlled the Premises" as the basis for the Plaintiff's premises liability claim, among other allegations. (*See* 2d Am. Compl. ¶¶ 479-87). For Count 11, the Second Amended Complaint alleges, "upon information and belief," that the Braves Defendants were involved in the negligent hiring, supervision, or retention of

Officers Monahan and Whitley and explains how. (*See id.* ¶¶ 522-33). Finally, for Count 12, the Second Amended Complaint alleges, "upon information and belief," that the Braves Defendants employed Officers Monahan and Whitley. (*See id.* ¶¶ 564, 566).

The Court agrees with the Plaintiff, like it did with the Business Defendants, that the Plaintiff is unable to specify which Defendants hired Officers Monahan and Whitley without discovery. Requiring further detail as to the Braves Defendants' role in the process at this stage would prematurely hinder the Plaintiff's ability to obtain a remedy. Unlike *Foreman*, there is no conspiracy alleged amongst the Braves and Business Defendants. Instead, the Plaintiff joins a number of plausible entities who could be responsible for the conduct-at-issue and assigns responsibility individually. For these reasons, the Second Amended Complaint is not a shotgun pleading, as well as those reasons mentioned earlier when analyzing the Business Defendants' Motion to Dismiss. The Court now turns to the Braves Defendants' substantive arguments.

### 1.  Negligence (Count 10)

The Braves Defendants argue for their dismissal from Count 10 of the Second Amended Complaint because the Plaintiff fails to assert any real factual allegations against the Braves Defendants. (*See* Br. in Supp. of Braves Defs.' Mot. to Dismiss, at 11-12).  The Braves Defendants are correct that the only factual allegations presented directly against them are those made "on

information and belief." (*See* 2d Am. Compl. ¶ 479; *id.* at 12). They are further correct that the Court need not accept as true any allegations within the Second Amended Complaint that are based "upon information and belief." *See Mann v. Palmer*, 713 F.3d 1306, 1315 (11th Cir. 2013) ("But we do not have to take as true Mann's allegations 'upon information and belief' that the supply of pentobarbital possessed by Florida is either expired, illegally obtained, or compounded pentobarbital."). Nonetheless, the Court finds that the Plaintiff has adequately pled sufficient facts for his negligence claim—just as it did with the Business Defendants.

Under Georgia law, "[t]he essential elements of a negligence claim are 'the existence of a legal duty; breach of that duty; a causal connection between the defendant's conduct and the plaintiff's injury; and damages.'" *Stadterman v. Southwood Realty Co.*, 361 Ga. App. 613, 615 (2021) (citation omitted). Premises liability, a subset of a negligence claim, can be pled by alleging facts that show "(1) that the defendant had actual or constructive knowledge of the hazard; and (2) that the plaintiff lacked knowledge of the hazard despite the exercise of ordinary care due to actions or conditions within the control of the owner/occupier." *Travis v. Quiktrip Corp.*, 339 Ga. App. 551, 553 (2016) (citation modified). "[I]t is well settled in Georgia that 'the fundamental basis for an owner or occupier's liability is that party's superior knowledge of the hazard encountered by the plaintiff.'" *Id.* (citation modified).

Here, the Plaintiff pleads negligence by premises liability against the Braves Defendants in Count 10. (*See* 2d Am. Compl. ¶¶ 479-85). Accordingly, the Plaintiff must plead that (1) the Braves Defendants are owners or occupiers, (2) they had actual or constructive knowledge of the hazard, and (3) the Plaintiff lacked knowledge of the hazard despite the exercise of ordinary care due to actions or conditions within the control of the Braves Defendants. *See Travis*, 339 Ga. App. at 553. The Plaintiff properly does so here.

First, the Plaintiff pleads that the Braves Defendants either owned or occupied the Premises at the relevant time. (2d Am. Compl. ¶ 479). While the pleading is done "[o]n information and belief," the Court recognizes that the specifics of who owns and occupies a premises is a matter that is discoverable once the parties engage in discovery. With the Plaintiff's repeated assurances that he will dismiss all non-relevant parties, the Court will consider the factual assertion. Then, the Plaintiff details the history of Officer Monahan's conduct, which includes past excessive force complaints on the Premises. (*See id.* ¶¶ 474-78). It is plausible, on these facts, that the Braves Defendants had actual or constructive knowledge of the hazard as owners or occupiers because these incidents occurred on the Premises. Additionally, there is no indication that the Plaintiff had any knowledge of the hazard since this would be information only the owners or occupiers would have. Accordingly, the Plaintiff plausibly states a claim for negligence in Count 10.

### 2. Employers (Counts 11, 12)

Under Georgia law, for an action based on negligent hiring, supervision, and retention, there must be "sufficient evidence to establish that the employer reasonably knew or should have known of an employee's tendencies to engage in certain behavior relevant to the injuries allegedly incurred by the plaintiff." *Novare Group, Inc. v. Sarif*, 290 Ga. 186, 190-91 (2011) (citation modified). Furthermore, as mentioned previously, "[a]n employer may be vicariously liable for torts committed by its employees." *Carnegay*, 353 Ga. App. at 658.

The Braves Defendants argue that the Plaintiff failed to plausibly allege that they employed Officers Monahan and Whitley, which is a predicate to both Counts 11 and 12. (*See* Br. in Supp. of Braves Defendants' Mot. to Dismiss, at 14-16). Indeed, on its face, this argument has some merit. The Second Amended Complaint alleges that Officers Monahan and Whitley were employed by Cobb County and *on behalf of* CTG. (2d Am. Compl. ¶¶ 514, 561 (emphasis added)). Nowhere in the Second Amended Complaint does it explicitly allege that Officers Monahan and Whitley were hired by any of the Braves Defendants.

The Plaintiff notes that the use of the term, "on behalf of," was intentional within the Second Amended Complaint, since the Braves Defendants could have hired Officers Monahan and Whitley for CTG's benefit pursuant to a leasing agreement. (*See* Pl.'s Br. in Opp'n to Braves Defs.' Mot. to Dismiss, at 14). Furthermore, the Plaintiff notes that its allegation that the

Braves Defendants were the hiring party "on information and belief" is based off a single lease agreement he reviewed that appears to reserve to the landlord the right to control security on the Premises. (*Id.* at 13 n.3). With this background, the Court finds no reason to discount the allegations pled "on information and belief." It is plausible that some or all of the Braves Defendants could have hired Officers Monahan and Whitley as off-duty police officers since they may have the right to control security on the Premises. Without further discovery, the extent of this control is unknown, and dismissal on this basis would be premature. Accordingly, the Court will not dismiss Counts 11 and 12 because the Plaintiff has adequately pled that the Braves Defendants are the employers of Officers Monahan and Whitley.

### 3. Vicarious Liability (Count 12)

The Braves Defendants make three arguments directed at Count 12 of the Second Amended Complaint. First, the Braves Defendants argue that they cannot be held vicariously liable for the actions of Officers Monahan and Whitley because the officers were performing police duties at the time of Plaintiff's arrest. (*See* Br. in Supp. of Braves Defs.' Mot. to Dismiss, at 16-17). Second, they argue that even if Officers Monahan and Whitley did not perform police duties, they did not direct the officers when the cause of action arose. (*See id.*). Finally, the Braves Defendants argue that even if they did direct the officers, the Plaintiff did not adequately allege such direction in the Second Amended Complaint. (*See id.* at 14-16).

The Braves Defendants' arguments, which mirror the Business Defendants' arguments against vicarious liability, fail for the same reason those arguments failed. Georgia courts ask whether the police officer is acting (1) as an agent of the city, (2) as an agent of the company, or (3) in a dual capacity. *Ambling Management Co., LLC*, 295 Ga. at 761-62 (citing *Pounds*, 142 Ga. at 418). In determining the role of an off-duty police officer, the relevant facts to consider are those that exist at the time the tort occurred. *Id.* at 763-64. Such an inquiry is often a jury question. *Id.*

Here, under the allegations presented, a jury could find that the officers were acting as agents for some or all of the Braves Defendants and were under the direction of the Braves Defendants. This is because Officers Monahan and Whitley could be subject to guidelines and policies imposed by the Braves Defendants in the course of their job performance. *See Smith v. Holeman*, 212 Ga. App. 158, 161 (1994) ("The evidence may show he was hired by [the defendant] to work in his police uniform, to lend that authority to his job."). Furthermore, it is plausible that Officers Monahan and Whitley's intent was to remove the Plaintiff from the Premises, instead of arresting him for any violation of law. *See id.* at 160 ("If [the officer] arrested [the plaintiff] because she violated the law, he was acting as a police officer . . . But if he arrested her to get her off his employer's premises, he was not acting solely as a "law enforcement officer.").

Here, if some or all of the Braves Defendants are the true employers of Officers Monahan and Whitley, the Plaintiff has alleged sufficient facts to state a claim for vicarious liability. Under those circumstances, the relevant Braves Defendants would be responsible for the provision of security for the Premises and would be subject to the rules and regulations of the Braves Defendants in performing their security role. Officer Monahan only became engaged with the Plaintiff when the Plaintiff was removed from PBR Atlanta. (*See* 2d Am. Compl. ¶ 538). Under the allegations of the Second Amended Complaint, the Plaintiff had committed no crime at the time of his removal from PBR Atlanta. (*See id.* ¶ 539). Defendant Monahan then only became engaged with the Plaintiff once again at Manager Gillis' direction, without any change in guidance. (*See id.* ¶ 548). It was this re-engagement that led Officers Monahan and Whitley to arrest the Plaintiff.

The Braves Defendants attempt to distance themselves by arguing that Manager Gillis was the only individual who controlled Officers Monahan and Whitley at the time of their arrest. (*See* Br. in Supp. of Braves Defs.' Mot. to Dismiss, at 17). But this argument is unsubstantiated because, if the Officer Defendants were employed by the Braves Defendants to provide security for the Premises, as the Second Amended Complaint adequately alleges, Manager Gillis' purported control only furthers the purpose for which the officers were hired. The Officer Defendants did not act with the sole intent of enforcing the law. Thus, both the Business Defendants and the Braves Defendants could

plausibly be vicariously liable pursuant to the allegations in the Second Amended Complaint. *See Smith*, 212 Ga. App. at 160 ("There is evidence that [the officer's] duties as a security guard included arresting disorderly persons to remove them from the premises, so it cannot be said as a matter of law that the arrest was lawful.").

With further discovery, the Court expects some of the Defendants will be dismissed. But it would be premature to do so now without any discovery into the contractual agreements between the Officer Defendants, Business Defendants and the Braves Defendants. Therefore, the Court will not dismiss the Braves Defendants from Count 12 at this time.

### 4.  Punitive Damages (Counts 10, 11)

Finally, the Braves Defendants request that all punitive damages claims against them be dismissed. (*See* Br. in Supp. of Braves Defs.' Mot. to Dismiss, at 17-18). Under Georgia law, "[p]unitive damages may be awarded only in such tort actions which it is proven by clear and convincing evidence that the defendant's actions showed willful misconduct, malice, fraud, wantonness, oppression, or that entire want of care which would raise the presumption of conscious indifference to consequences." O.C.G.A § 51-12-5.1(b). The Plaintiff once again points to allegations that some of the Braves Defendants had active or constructive knowledge of the danger presented by the presence of Officer Monahan and Whitley on the Premises. Although such allegations were enough to sustain a claim under Counts 10 and

11, the Court holds that, even when construing the Second Amended Complaint's allegations in the light most favorable to the Plaintiff, the Plaintiff fails to adequately plead that the relevant Braves Defendants acted willfully or with conscious indifference.

The Plaintiff's allegations against the Braves Defendants are too attenuated for a finding of willfulness or conscious indifference. While it is plausible that the Braves Defendants hired Officers Monahan and Whitley to provide security on behalf of CTG, as the Plaintiff pleads it, almost all control over the officers was in the hands of the Business Defendants. (*See, e.g.,* 2d Am. Compl. ¶¶ 447, 449-50, 457). No factual allegations, outside of conclusory ones, demonstrate any willful conduct or any conscious indifference to consequences. The Plaintiff repeats the elements of Counts 10 and 11 and argues that pleading the elements alone is enough to raise "the presumption of conscious indifference to consequences." (*See* Pl.'s Br. in Opp'n to Braves Defs.' Mot. to Dismiss, at 21-22 [Doc. 76]). The Plaintiff argues such pleading is enough to sustain a claim for punitive damages, refencing two cases within this District where such pleading has been sufficient. (*See id.* at 22-23 (citing *Barker v. Marriott Int'l, Inc.*, 2023 WL 2482961 (N.D. Ga. Mar. 13, 2023), then citing *Blanchard v. Guzman*, 2023 WL 10475999 (N.D. Ga. May 8, 2023)). Both cases are distinguishable and actually cut against the Plaintiff's position.

In *Barker*, this Court noted that "[p]unitive damages cannot be imposed without a finding of some form of culpable conduct. *Negligence, even gross*

*negligence, is inadequate to support a punitive damage award.*" 2023 WL 2482961, at *2 (quoting *Colonial Pipeline Co. v. Brown*, 285 Ga. 115, 118 (1988) (citation modified)); *see also Blanchard*, 2023 WL 10475999, at *2-3 (quoting *MDC Blackshear, LLC v. Littell*, 273 Ga. 169, 173 (2000), supporting the same proposition). Although this Court found that general allegations of knowledge of the hazardous condition-at-issue were sufficient to plausibly support the plaintiff's claims for punitive damages, the defendant in that case directly owned and managed the hotel day-to-day, *id.* at *1-2, unlike the Braves Defendants who would have leased out the Premises to the Business Defendants here. The Braves Defendants' role is too attenuated from the incident to support a finding of punitive damages.

The issue of attenuation persists in the Plaintiff's reliance on *Blanchard*. In *Blanchard*, a plaintiff injured by a tractor-trailer alleged that an employer defendant knew or should have known that the employee defendant was not qualified to operate the vehicle based on his experience, safety, or training. 2023 WL 10475999, at *1, *3. The court acknowledged that, while the allegations were sparse, general allegations regarding a defendant's knowledge "are often considered sufficient at the pleading stage to plausibly support a plaintiff's punitive damages claim." *Id.* at *3 (citing Fed. R. Civ. P. 9(b), then citing *Barker*, 2023 WL 2482961, at *2). Here, the Plaintiff does not even have allegations to this level. For Count 10, the Plaintiff states that the pertinent Braves Defendants' failure to protect him from the dangers of the

64

off-duty officers alone is evidence of willfulness or conscious indifference to consequences. (2d Am. Compl. ¶ 487). Count 11 is even more sparse, where the Plaintiff simply states that the pertinent Braves Defendants' behavior in hiring, supervising, and retaining the off-duty officers warrants punitive damages. (*Id.* ¶ 534).

Even if such pleadings were sufficient, *Blanchard* involves a direct employer-employee relationship where the employer could control the employee directly, whereas the pertinent Braves Defendants lack the same direct control. Accordingly, although conclusory allegations could sustain punitive damages against the Business Defendants, they cannot support a claim for punitive damages against the pertinent Braves Defendants. Therefore, the Plaintiff's claims for punitive damages in Counts 10 and 11 are hereby dismissed.

## IV.    Conclusion

For the foregoing reasons, the Business Defendants' Motion to Dismiss [Doc. 64] is DENIED, the Officer Defendants' Motion to Dismiss [Doc. 65] is GRANTED in part and DENIED in part, the County Defendants' Motion to Dismiss [Doc. 66] is GRANTED in part and DENIED in part, the Braves Defendants' Motion to Dismiss [Doc. 74] is GRANTED in part and DENIED in part, and the Defendants' Joint Motion to Stay [Doc. 79] is DENIED as moot.

SO ORDERED, this   4th   day of March, 2026.

THOMAS W. THRASH, JR.
United States District Judge